IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD KELLY, CM-8417, )<br>    Petitioner, )<br>)<br>v. )<br>)<br>SUPT. WAKEFIELD, et al., )<br>    Respondents. ) | Civil Action No. 05-584 |

Amended Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Richard Kelly for a writ of habeas corpus be dismissed and that a certificate of appealability be denied for failure to set forth a viable federal claim.

II. Report:

Richard Kelly, an inmate at State Correctional Institution - Greensburg, has presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis.

Kelly is presently serving a life sentence imposed following his conviction, by a jury, of first degree murder. This sentence was imposed on May 27, 1999.[1] Post-sentence motions were

---

[1] The petitioner was originally convicted and sentenced to life imprisonment on September 6, 1994. An appeal was taken to the Superior Court, and on March 19, 1996, the Superior Court reversed the conviction and remanded the case for a new trial (Comm. Ex. 13). Leave to appeal to the Pennsylvania Supreme Court was granted and on January 21, 1999, the Supreme Court affirmed the decision of the Superior Court (Comm. Ex. 16). Thereupon, a new trial was conducted resulting in the conviction challenged here.

unsuccessfully filed and on October 6, 1999 a notice of appeal was filed.[2]

On appeal, the petitioner contended he was entitled to relief on the following claims:

I. The trial court erred in rejecting the Batson challenge, finding no prima facie case, and not requiring the prosecutor to give a racially neutral reason for the use of peremptory strikes.

II. The trial court erred in denying the defendant's attorney the opportunity to ask the expert witness a hypothetical question regarding the effects of intoxication regarding the accused.

III. The trial erred in refusing to give an instruction regarding voluntary intoxication.[3]

On September 7, 2000, the judgment of sentence was affirmed.[4] Leave to appeal to the Pennsylvania Supreme Court was not sought.

On October 5, 2001, the petitioner, through counsel, submitted a post-conviction petition in which he argued that he was denied the effective assistance of counsel due to counsel's failure to seek leave to appeal his conviction to the Pennsylvania Supreme Court.[5] Amended petitions were filed on April 5, 2002 and September 15, 2002.[6] On September 3, 2002, post-conviction relief was denied.[7]

An appeal was taken to the Superior Court in which the issues presented were:

---

[2] See: Comm. Ex. 25, 28.

[3] See: Comm. Ex. 32.

[4] See: Comm. Ex. 33.

[5] See: Comm. Ex. 34.

[6] See: Comm. Ex. 37, 40.

[7] See: Comm. Ex. 41.

      1. Did the trial court err in finding that trial counsel at appellant's second trial was not ineffective for failing to properly cross-examine primary Commonwealth witness Nellie Dreher?

      2. Did the trial court err in determining that trial counsel was not ineffective for failing to subpoena or otherwise procure the testimony of eyewitness Clifford Nash at appellant's retrial?

      3. Did the trial court err in finding that trial counsel was not ineffective for failing to request a jury instruction regarding "false in one, false in all"?

      4. Did the trial court err in finding that trial counsel was not ineffective for failing to request a jury instruction that Nellie Dreher's testimony should have been scrutinized more carefully?

      5. Did the trial court err in determining that trial counsel was not ineffective for stating to the jury, in his closing argument, that appellant committed the instant crime?

      6. Did the trial court err in determining that trial counsel was not ineffective for failing to object to the improper bolstering of primary Commonwealth witness Nellie Dreher's credibility?

      7. Did the trial court err in finding that trial counsel was not ineffective for failing to communicate a plea offer by the Commonwealth?

      8. Was PCRA counsel ineffective for failing to properly present and argue aforementioned issue numbers one, three, four, five, six and seven?[8]

On January 6, 2004, the denial of post-conviction relief was affirmed.[9] The Superior Court relied upon Judge Zottola's March 13, 2003 opinion denying the post-conviction petition in rendering its decision.[10]

---

    [8] See: Comm. Ex. 48.

    [9] See: Comm. Ex. 49.

    [10]The Commonwealth states that it has attached Judge Zottola's opinion to its Answer as Exhibit 46. In fact, Exhibit 46 is a copy of Judge Zottola's June 1, 1995 opinion regarding matters complained of on appeal by petitioner from his first trial (see Comm. Ex. 11). However, Judge Zottola's March 13, 2003 opinion is attached to petitioner's Superior Court brief (see

These same issues were then presented in a petition for leave to appeal to the Pennsylvania Supreme Court.[11]  Leave to appeal was denied on January 10, 2005.[12]

The instant petitioner is undated, but the petitioner's request for financial information in support of his application for leave to proceed in forma pauperis, is dated April 25, 2005.  In his petition, petitioner contends he is entitled to relief on the following grounds:

> A. Should a federal evidentiary hearing be held on counsel's ineffective assistance via counsel's failure to inform petitioner of a pretrial offer for a plea of third degree murder?
>
> B. Was the petitioner denied due process of law by the state court when they failed to permit an expert to testify to support an involuntary intoxication defense?
>
> C. Should trial counsel be rendered to have provided ineffective assistance for remarks given in the closing that removed the presumption of innocence from petitioner?
>
> D. Should trial counsel be found to have provided ineffective assistance of counsel by failing to request the court provide a charge on "false in one, false in all..."?
>
> E. Should the appellate courts of Pennsylvania be found in error for affirming the trial court when it refused to provide a special scrutiny charge to the instant jury?
>
> F. Should trial counsel be rendered to have provided ineffective assistance for failing to call a known witness that could have changed the outcome of the trial?

On June 21, 2005, a Report and Recommendation was filed (Docket No. 11), recommending that the petition be dismissed for failure to timely seek federal habeas corpus relief.  The Report and Recommendation put petitioner on notice of this recommended

---

Comm. Ex. 48), the Superior Court decision (see Comm. Ex. 49) and the petition for allowance of appeal (see Comm. Ex. 51 App. B).

[11] See: Comm. Ex. 51.

[12] See: Comm. Ex. 52.

disposition and permitted him to raise any appropriate response in his objections pursuant to United States v. Bendolph, 409 F.3d 155 (3d Cir. 2005) (en banc). In his objections, filed on July 5, 2005 (Docket No. 13), petitioner states that he is gathering affidavits to support his contention that his counsel actively misled him and his family as to the handling of his appeal and that these acts permit equitable tolling of the statute of limitations contained in 28 U.S.C. § 2244(d). Such affidavits could entitle petitioner to equitable tolling of the statute of limitations, or at least present an issue of fact that would have to be resolved at an evidentiary hearing.

However, this Amended Report and Recommendation is being filed because, regardless of the resolution of the timeliness issue, the petition should be dismissed for failure to exhaust available state court remedies, procedural default and failure on the merits. Thus, the Court may assume, without deciding, that the petition was timely filed.

Exhaustion

The first issue that must be addressed by a federal district court when considering a habeas corpus petition filed by a state prisoner is whether the prisoner has exhausted available state court remedies as required by 28 U.S.C. §§ 2254(b) and (c). The Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), provides that:

> (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A)  the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(I)  there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

28 U.S.C. § 2254(b).

It is well settled that, as a matter of comity, the state should be provided with the first opportunity to consider the claims of constitutional violations and to correct any errors committed in its courts. Rose v. Lundy, 455 U.S. 509, 518 (1981); Preiser v. Rodriguez, 411 U.S. 475 (1973). Accordingly, before a state prisoner's claims may be addressed by a federal habeas court, the constitutional issues must first have "been fairly presented to the state courts" for review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Both the factual and legal basis for the claim must have been presented to the state courts. Thus, the Supreme Court held that "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 366 (1995).

The Court of Appeals has noted some of the ways in which petitioners who do not explicitly refer to federal law can demonstrate that they communicated to the state courts that they were asserting a claim predicated on federal law:

> the required message can be conveyed through "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing

constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."

McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (quoting Evans v. Court of Common Pleas, Del. Cty., Pa., 959 F.2d 1227, 1232 (3d Cir. 1992)).

Procedural Default

Habeas petitioners who have not fairly presented their claims to the state courts have failed to exhaust their claims, but at the same time, if a state procedural rule would bar them from seeking further relief, the claims cannot be reviewed because of this procedural default. Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)). In Lines, the petitioner had filed a direct appeal to the Superior Court and a petition for allowance of appeal in the Pennsylvania Supreme Court. He then filed a petition pursuant to the Pennsylvania Post Conviction Relief Act, 42 Pa. C.S. § 9541-46 (PCRA) and appealed from the denial of the petition to the Pennsylvania Superior and Supreme Courts. However, the Court of Appeals concluded that he had not "fairly presented" to the Pennsylvania courts any of the claims that he was presenting in his habeas corpus petition.

The Court of Appeals did not affirm the district court's dismissal of the federal habeas corpus petition on the ground that Lines had failed to exhaust available state court remedies and that he should file another PCRA petition. Rather, the court concluded that he had no more available state court remedies because the statute of limitations under the PCRA, 42 Pa. C.S. § 9545(b)(1), would prohibit him from filing any PCRA petition, including a second or subsequent petition, more than one year after the judgment becomes final unless certain

7

exceptions are met, which did not apply to the case. The court noted that the Pennsylvania Supreme Court had held in Commonwealth v. Banks, 726 A.2d 374 (Pa. 1999), that the time restrictions under the PCRA are jurisdictional. Id. at 164 & n.17. The court concluded that "[w]hen exhaustion is futile because state relief is procedurally barred, federal courts may only reach the merits if the petitioner makes the standard showing of 'cause and prejudice' or establishes a fundamental miscarriage of justice." Id. at 166 (citation omitted). Because the petitioner failed to meet either exception to the procedural bar, all of his claims were procedurally barred from review and the court dismissed the petition with prejudice. Id. at 169.

The Commonwealth contends that issues B and E are unexhausted and procedurally defaulted because petitioner failed to raise them as federal constitutional claims in the state courts and he may no longer do so. Issue B (the trial court's refusal to allow counsel to ask an expert about petitioner's level of intoxication) was raised and decided as a question of state law. Petitioner contends that he "relied upon pertinent federal cases employing constitutional analysis."[13] However, in his brief filed in the Superior Court,[14] he cited only state court cases on the issue of "retrograde extrapolation," that is, whether an expert could be asked to determine a defendant's blood alcohol level at the time of the crime based upon when he had his last drink. The Superior Court denied this claim upon finding that the trial court had not abused its discretion in determining not to permit this line of questioning to the expert.[15]

Similarly, issue E (the trial court's failure to provide a "special scrutiny charge") was

---

[13]Docket No. 12 at 3 ¶ 10.

[14]Comm. Ex. 32.

[15]Comm. Ex. 33 at 6-8.

8

presented and decided as a claim under state law. As the Court of Appeals has held, "we may order the discharge of a state prisoner on the basis of defective jury instructions only if his or her fundamental due process rights have been violated." Geschwendt v. Ryan, 967 F.2d 877, 883 (3d Cir. 1992) (citing Cupp v. Naughten, 414 U.S. 141, 146 (1973)). Jury instructions that are allegedly defective under state law do not rise to the level of a fundamental due process claim in habeas corpus. See Johnson v. Rosemeyer, 117 F.3d 104, 109 (3d Cir. 1997) (denying petitioner's challenges to jury instructions to the extent that they were allegedly erroneous under state law). Petitioner described his claim only in terms of state law and did not argue that any allegedly erroneous jury instructions violated his constitutional rights. In fact, he specifically argued that trial counsel should have requested that the trial court give Pennsylvania Standard Criminal Jury Instruction No. 4.06.[16] The Superior Court, adopting Judge Zottola's opinion, rejected this claim.[17]

Petitioner has procedurally defaulted the two claims that he did not present to the Pennsylvania courts as federal constitutional claims. He has not argued that he can demonstrate "cause" for his failure to raise these claims as federal constitutional claims, that he suffered "prejudice" therefrom, or in the alternative that he will suffer a "fundamental miscarriage of justice" if these claim are not heard. Moreover, he would not meet the standard necessary to satisfy either exception to the procedural fault bar in any event.

The issue of cause "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's

---

[16] Comm. Ex. 48 at 17.

[17] Comm. Ex. 51 App. B at 4.

9

procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Because petitioner's counsel did not raise these issues, he cannot refer to any source external to the defense. Thus, he cannot establish the existence of "cause" to excuse the procedural default.

Even where no cause or prejudice can be shown, a federal court may grant a writ of habeas corpus where failure to hear the claim would result in a miscarriage of justice. Sawyer v. Whitley, 505 U.S. 333, 339 (1992). A fundamental miscarriage of justice occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. Murray v. Carrier, 477 U.S. 478, 495-96 (1986); Hull v. Freeman, 991 F.2d 86, 91 n. 3 (3d Cir. 1993). To meet this standard, the prisoner must show a fair probability that, in light of all the evidence, including that claimed to have been illegally admitted and that claimed to have been wrongly excluded or which became available only after trial, the trier of fact would have entertained a reasonable doubt of his guilt. Sawyer, 505 U.S. at 339 n. 5 (citing Kuhlmann v. Wilson, 477 U.S. 436, 454 n. 17 (1986)). This exception is exceedingly narrow: "'To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial.' Given the rarity of such evidence, 'in virtually every case, the allegation of actual innocence has been summarily rejected.'" Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)).

In this case, petitioner claims that he is actually innocent of the crimes with which he was charged because the Commonwealth could not demonstrate whether he or his co-defendant fired the fatal shot. The state courts rejected this contention. Thus, he can not meet the high burden of demonstrating a fundamental miscarriage of justice. Therefore, his claims that he was denied due process when the trial court refused to permit his counsel question an expert toxicologist

about his level of intoxication on the night of the shooting and that the appellate courts erroneously affirmed the trial court's refusal to provide a special scrutiny charge regarding Nellie Dreher's being under the influence at the time she witnessed the events in question are procedurally barred from review. The remaining claims will be addressed on the merits.

The facts, as summarized by the trial court, are as follows::

> On June 26, 1993, the victim, Carol Bracey, and his fiancé[e], Nellie Dreher, were inside the apartment of Monica Dreher, which is located on the second floor, Building #1, of the Blair Heights Housing Project in the City of Clairton, Allegheny County. Also in the apartment at that time were Defendants Richard Kelly and Edward Domes, as well as family members and friends of Nellie Dreher. Carl Bracey entered the apartment after the Defendants and, after his arrival, an argument ensued between him and Defendant Domes. Bracey and his fiancé[e] then exited the apartment, at which point Defendants Domes and Kelly followed them. Thereafter, a physical fight erupted between Bracey and Defendant Domes. Bracey was on top of Defendant Domes when Defendant Kelly pulled out a gun and pointed it at Bracey's neck. Bracey then removed himself from his position on top of Defendant Domes, and with his hands raised, he asked, "What are you going to do, shoot me?" As Bracey proceeded to run from the scene, both Defendants raised their guns and fired them at Bracey. It was determined that Bracey had been shot three (3) times in the back of his head, which resulted in his death. [Both] Defendant[s] ... fled the scene.[18]

Standard of Review

To be entitled to federal habeas relief a state petitioner must meet the requirements of 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[18] Comm. Ex. 30 at 2-3.

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Section 2254(d) "firmly establishes the state court decision as the starting point in habeas review." Hartey v. Vaughn, 186 F.3d 367, 371 (3d Cir. 1999). This provision governs not only pure issues of law, but mixed questions of law and fact such as whether counsel rendered ineffective assistance. Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).

The Supreme Court has held that, "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite that to that reached by this Court on a question of law or if the state court decides a case differently than this Court on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The Court has also held that

> the "unreasonable application" prong of § 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of petitioner's case. In other words, a federal court may grant relief when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced." In order for a federal court to find a state court's application of our precedent "unreasonable," the state court's decision must have been more than incorrect or erroneous. The state court's application must have been "objectively unreasonable."

Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Lockyer v. Andrade, 538 U.S. 63, 76 (2003) (other citations omitted)).

Ineffective Assistance of Counsel

The Supreme Court:

established the legal principles that govern claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An ineffective assistance claim has two components: A petitioner

12

> must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. Id., at 687, 104 S.Ct. 2052. To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052. We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Ibid.

Wiggins, 539 U.S. at 521.

To satisfy the first prong, the petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [he] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 690 (quoting Michel v. State of Louisiana, 350 U.S. 91, 101 (1955)). To satisfy the second prong, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In addition, although petitioner must satisfy both prongs to succeed on his ineffectiveness claim, the Court noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. at 697. The Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Werts, 228 F.3d at 204. Thus, the relevant question is whether the decisions of the Pennsylvania courts involve an unreasonable application of Strickland. Jacobs v. Horn, 395 F.3d 92, 106 n.9 (3d Cir. 2005).

AEDPA provides that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person

in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

      Claim A – Failure to Communicate Plea Bargain

In his first claim, petitioner contends that trial counsel was ineffective for failing to communicate a plea bargain to him. As support for this claim, petitioner submitted to the PCRA court the affidavit of Rosanne Manns, a friend of petitioner's brother and co-defendant, Edward Domes. Manns averred that she overheard an offer being made to counsel in the courtroom on or about May 17, 1999 and informed Domes of this fact during a visit with him in jail on May 29 or May 30, 1999.[19] The Commonwealth argues that the Superior Court's decision rejecting this claim is not contrary to or an unreasonable application of Strickland v. Washington.[20]

The Superior Court relied on Judge Zottola's opinion, which stated that:

This Court has reviewed the appended affidavit and finds that the issue has been insufficiently pled. The affidavit is void of detail necessary for the Petitioner to meet his burden. The witness' address is present, but not a date of birth. Furthermore, a glaring insufficiency exists since there are no affidavits attached or referred to from other alleged witnesses to the plea offer, i.e., the Assistant District Attorney, counsel for the Petitioner, or counsel for the Petitioner's co-defendant.[21]

The Superior Court's conclusion that petitioner failed to support his claim that his counsel was ineffective for failing to communicate a plea bargain offer to him is not "an

---

[19] See Comm. Ex. 38 Ex. A.

[20] The Commonwealth also contends that this issue was decided on independent and adequate state law grounds. Because the claim should be rejected on the merits, the Court need not address this alternative argument.

[21] Comm. Ex. 51 App. B at 5-6.

14

unreasonable application of" Strickland v. Washington.

Claim C – Counsel's Removing Presumption of Innocence

In his next claim, petitioner contends that his trial counsel was ineffective for making remarks in his closing that removed his presumption of innocence. The Superior Court relied on Judge Zottola's opinion, which stated that:

> This Court has reviewed the passage in question, as well as trial counsel's complete closing argument and it is clear from that review that trial counsel was urging the jury to arrive at a verdict short of Murder in the First Degree. The argument was an attempt to negate the specific intent to kill required of First Degree Murder by stating that, if the jury found that they did not intend to shoot the victim and as trial counsel went on to argue, i.e. they were shooting over the victim's head, then the jury may have found that the specific intent to kill was lacking and that a lesser verdict was appropriate.
>
> To support a claim of ineffectiveness, it must be shown that the underlying claim is of arguable merit, the course chosen by trial counsel did not have a reasonable basis to effectuate the interests of the Defendant and that the ineffectiveness prejudiced the Defendant. The tactic chosen by defense counsel was carefully planned to obtain the best possible result for the Defendant.[22]

In a footnote, Judge Zottola observed that "[t]he reasonableness of the strategy is apparent in light of the Defendant's previous conviction for first degree murder, based on essentially the same facts."[23] This determination was not an unreasonable application of Strickland v. Washington.

Claim D – Failure to Request "False in One, False in All" Charge

In his next claim, petitioner contends that trial counsel was ineffective for failing to request a "false in one, false in all" charge regarding the testimony of Nellie and Alita Dreher.

---

[22]Comm. Ex. 51 App. B at 4-5.

[23]Comm. Ex. 51 App. B at 5 n.2.

15

The Superior Court relied upon Judge Zottola's opinion, which stated that "[t]he general charge of credibility covers this charge. Therefore, the Petitioner's claim must fail."[24] This was not an unreasonable application of Strickland v. Washington.

    Claim F – Failure to Call Clifford Nash

In his final claim, petitioner contends that counsel was ineffective for failing to call Clifford Nash. The Superior Court relied upon Judge Zottola's opinion, which stated that:

> When allegations of ineffectiveness involve the failure to call witnesses, in addition to the general requirements, certain criteria must be met. Petitioner must establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for Appellant at trial; and (5) the absence of testimony prejudiced Appellant so as to deny him a fair trial. A defendant must establish prejudice by demonstrating that he was denied a fair trial because of the absence of the testimony of the proposed witness.
>
> In the present case, the proposed witness testified at the prior trial and, following the testimony, the fact finder found the Petitioner guilty of Murder in the First Degree. The Petitioner has failed to demonstrate that he was prejudiced. Therefore, the Petitioner's claim must fail.[25]

This conclusion was not an unreasonable application of Strickland v. Washington.

In summary, claims B and E are unexhausted and procedurally defaulted. Therefore, they should not be reviewed on the merits. Upon review of claims A, C, D and F on the merits, they should be rejected because they are without merit.

    Certificate of Appealability

The decision whether to grant or deny a certificate of appealability is "[t]he primary means of separating meritorious from frivolous appeals." Barefoot v. Estelle, 463 U.S. 880, 893

---

[24]Comm. Ex. 51 App. B at 4.

[25]Comm. Ex. 51 App. B at 3-4.

(1983).  If a certificate of appealability is granted, the Court of Appeals must consider the merits of the appeal.  However, when the district court denies a certificate of appealability, the Court of Appeals can still grant one if it deems it appropriate.  28 U.S.C. § 2253.

"A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This petition does not present a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability should be denied.

For these reasons, it is recommended that the petition of  for a writ of habeas corpus be dismissed, and that a certificate of appealability be denied for failure to set forth a viable federal claim.

Within ten (10) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                Respectfully submitted,

                s/Robert C. Mitchell
                Robert C. Mitchell
                United States Magistrate Judge

Dated: September 1, 2005